UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COMCAST CABLE COMMUNICATIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 CV 05284 |
| | ) | |
| v. | ) | The Honorable Ruben Castillo |
| | ) | |
| DIRECTV INC., | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT DIRECTV INC.'S PRELIMINARY RESPONSE TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND FACTS .........................................................................................................2

ARGUMENT ...........................................................................................................................4

I.      THERE IS NO TRUE EMERGENCY HERE, AS DEMONSTRATED BY COMCAST'S MULTI-MONTH DELAY IN RAISING ANY ISSUE WITH THE NFL SUNDAY TICKET AD CAMPAIGN. ......................................................................5

II.     COMCAST DOES NOT HAVE A LIKELIHOOD OF SUCCESS ON THE MERITS. ...................................................................................................................7

     A.     "NFL Sunday Ticket Included At No Extra Charge" Is True and Every Condition That Comcast Asserts Is "Material" To The Offer Is Included In The Ads. ..........................................................................................................7

     B.     "That's The Only Game We Get With Cable" Is Also Literally True In The Context Of The "Dip" Commercial, As Comcast Essentially Concedes In Its Motion. ......................................................................................12

     C.     DIRECTV's "NFL Sunday Ticket Included At No Extra Charge" Commercials Comply With The AG Judgments, And No AGs Have Complained About These Ads. .............................................................................13

     D.     Consumers Are Made Aware of the Terms and Conditions Multiple Times Before Finalizing the Transaction. .....................................................................15

     E.     DIRECTV's Disclosures Are Nearly Identical to Comcast's Disclosures. ...........17

     F.     A Temporary Restraining Order Is Moot With Respect To Certain DIRECTV Advertisements. .................................................................................18

III.    BALANCE OF HARMS WEIGHS IN FAVOR OF DENYING THE TEMPORARY RESTRAINING ORDER. .......................................................................19

CONCLUSION .......................................................................................................................21

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbott Labs. v. Mead Johnson & Co.*,
   971 F.2d 6 (7th Cir. 1992) ................................................................................. 13

*B. Sanfield, Inc. v. Finlay Jewelry Corp.*,
   258 F.3d 578 (7th Cir. 2001) (J. Easterbrook) .............................................. 19, 20

*BASF Corp. v. Old World Trading Co., Inc.*,
   41 F.3d 1081 (7th Cir. 1994) ......................................................................... 12, 13

*Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.*,
   No. 01 C 585, 2001 WL 128164 (N.D.Ill. Feb. 9, 2001) ...................................... 4

*Boucher v. Sch. Bd. of the Sch. Dist. of Greenfield*,
   134 F.3d 821 (7th Cir. 1998) ......................................................................... 4, 19

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
   627 F. Supp. 2d 384 (D. N.J. 2009) ...................................................................... 8

*E. St. Louis Laborers Local 110 v. Bellon Wreckage & Salvage*,
   414 F.3d 700 (7th Cir. 2005) ................................................................................ 5

*Euro-Pro Operating LLC v. Euroflex Americas*,
   2008 WL 5137060 (S.D. N.Y. Dec. 8, 2008) ........................................................ 8

*Fed'n of Advertising Indus. Representatives v. City of Chicago*,
   326 F.3d 924 (7th Cir. 2003) ......................................................................... 18, 19

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*,
   549 F.3d 1079 (7th Cir. 2008) .............................................................................. 4

*Herbko Int'l, Inc. v. Gemmy Indus. Corp.*,
   916 F. Supp. 322 (S.D. N.Y. 1996) ..................................................................... 13

*Long v. Bd. of Educ., Dist. 128*,
   167 F. Supp. 2d 988 (N.D. Ill. 2001) ..................................................... 4, 5, 7, 20

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) .............................................................................................. 4

*QVC, Inc. v. Your Vitamins, Inc.*,
   714 F. Supp. 2d 291 (D. Del. 2010) .................................................................... 13

## TABLE OF AUTHORITIES (CONTINUED)

**Page**

*Rizzo v. Goode*,
  423 U.S. 362 (1976)................................................................................................... 4

*Roland Machinery Co. v. Dresser Indus., Inc.*,
  749 F.2d 380 (7th Cir. 1984) .................................................................................... 4

*Shaffer v. Globe Protection, Inc.*,
  721 F.2d 1121 (7th Cir. 1983) ............................................................................. 5, 6

*SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson Merck Consumer
  Pharm. Co.*,
  906 F. Supp. 178 (S.D N.Y. 1995).................................................................... passim

*Stokley-Van Camp, Inc. v. Coca-Cola Co.*,
  1987 WL 6300 (N.D. Ill. Jan. 30, 1987)............................................................. 5, 6

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  2007 WL 1138879 (S.D.N.Y. April 16, 2007) ........................................................ 8

*Ty, Inc. v. Jones Grp., Inc.*,
  237 F.3d 891 (7th Cir. 2001) ............................................................................... 5, 7

*United Indus. Corp. v. Clorox Co.*,
  140 F.3d 1175 (8th Cir. 1998) ............................................................................... 20

### Other Authorities

http://www.merriam-webster.com/dictionary/extra........................................................ 8

## <u>INTRODUCTION</u>

Comcast's emergency motion for a temporary restraining order should be denied for the simple reason that it seeks to stop truthful statements that DIRECTV has been advertising for months. Back in May, DIRECTV began advertising that new DIRECTV customers can get the NFL Sunday Ticket™ package included with their subscription at no extra charge—a true statement. As Exhibit A to Comcast's Motion reveals, by July 8, 2011, DIRECTV began running a television commercial again stating that "NFL Sunday Ticket is included at no extra charge," along with the offer's conditions, and directing customers to www.directv.com and 1-800-DIRECTV for additional details. Comcast never complained.

Only now—months after the challenged advertisements first began—does Comcast bring its so-called emergency motion, which would fundamentally alter the status quo and disrupt DIRECTV's legitimate business efforts to advertise its exclusive rights to NFL Sunday Ticket right before the football season begins. The fact of the matter is there is no emergency whatsoever, which is reason alone to deny Comcast's motion. As further described below: (1) the claim that new customers can get NFL Sunday Ticket included at no extra charge is true; (2) the commercials contain the disclosures required by the AG Judgments; (3) additional detailed terms and conditions associated with the offer have always been available online at www.directv.com (whether browsing or signing-up), and are verbally provided to customers when they call 1-800-DIRECTV; and (4) Comcast has not demonstrated any irreparable harm caused by the ads. Accordingly, this Court should deny Comcast's motion for a temporary restraining order.[1]

---

[1]  In light of Comcast's oversized brief and voluminous filing in advance of the imminent hearing on a single day's notice, DIRECTV did not have sufficient time to edit this Preliminary Response to meet the page limit prescribed by L.R. 7.1 and thus respectfully requests leave to exceed the limit.

## BACKGROUND FACTS

NFL Sunday Ticket is a programming service offered exclusively by DIRECTV. DIRECTV subscribers with NFL Sunday Ticket enjoy all of the NFL games every Sunday in High Definition (subject to federal blackout rules), as well as features such as the Game Mix Channel, which allows the customer to watch eight games at once, and the Red Zone Channel®, which allows the customer to watch the final yards of a scoring drive.  Comcast and other multi-channel television programming providers try hard to compete with DIRECTV's NFL offering, and make every effort to diminish the effectiveness of DIRECTV's advertising campaigns leading up to the NFL season.  This lawsuit is just one example.

In recent years, DIRECTV has offered various promotions involving NFL Sunday Ticket for new and existing customers.  Declaration of Joshua Stern ("Stern Decl.") ¶ 3.  This year, DIRECTV is including NFL Sunday Ticket at no extra charge to new customers who sign up for the Choice XTRA programming package (or above).  *Id*.  A new customer who signs up for the Choice XTRA programming package receives free High Definition (HD) service, a free HD Receiver and HD DVR, free HBO, free Showtime, Starz, and Cinemax for three months, and NFL Sunday Ticket at no extra charge.  *See* www.directv.com.  As with all new customer offers, the customer in exchange agrees to either maintain their minimum programming package for 24 months, or cancel before the end of the term and pay a pro-rated cancellation fee of $20/per month remaining on the service term.  *See id*.

The offer for NFL Sunday Ticket at no extra charge went live over two months ago, on May 22, 2011, and DIRECTV began advertising the offer by May 31, 2011.  Stern Decl. ¶ 4. DIRECTV advertised the NFL Sunday Ticket offer on its website *(see, e.g, id*., Ex. 1 (May 31, 2011 website images with offer and terms and conditions)) and in its national advertising circulars.  *Id*., Ex. 2 (June 2011 print advertisement).  Both the website and print ads disclosed

2

the terms and conditions associated with this offer. Comcast never complained about these advertisements or the offer.

DIRECTV also began running television commercials regarding the NFL Sunday Ticket offer. The "Banker" television commercial (referred to in Comcast's complaint as the "Helicopter" commercial) debuted on July 8, 2011. *Id.* ¶ 5. The "Dip" television commercial with Deion Sanders (referred to by Comcast as the "Only Game" commercial) debuted on July 26, 2011, and the "Keys" commercial (referred to by Comcast as the "Philadelphia Eagles" commercial) debuted on July 27, 2011. *Id.* All three commercials were provided to the major television networks for review and were approved before they aired. *Id.* ¶ 6.

DIRECTV also briefly utilized some radio advertising, which were not DIRECTV produced advertisements but rather live, on-air performances by radio personalities based on talking points or "readers" provided to the radio stations. The live radio read occurred, at most, over three days from July 26, 2011 until July 28, 2011, and stopped over a week ago. *Id.* ¶ 8.

More than two months after DIRECTV began advertising the "NFL Sunday Ticket at no extra charge" offer, Comcast sent DIRECTV a letter on August 1, 2011 demanding that DIRECTV "immediately cease and desist" making the "NFL Sunday Ticket at no extra charge" offer. Dkt. 8, Ex. O. In addition, Comcast complained that the "Keys" commercial, which included a man in a Philadelphia Eagles Jersey who complained about not getting the Eagles game on television, suggested that cable customers in the Philadelphia metropolitan area will not have access to Eagles games. *Id.* At the NFL's request, and after receiving a letter from Comcast complaining about the advertisement on Monday, August 1, DIRECTV changed the "Keys" commercial. It now states on screen during the beginning moments of the commercial

that the time and location is "10am, Los Angeles" so that the viewer knows where the Eagles fan is located.  Stern Decl. ¶ 7.

Rather than spend its time and effort competing legitimately with DIRECTV in the marketplace, Comcast filed this lawsuit and seeks "emergency" relief over an advertising campaign that has been ongoing for months.

## ARGUMENT

"[T]he granting of a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it."  *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984); *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008).[2]  As "'a preliminary injunction is an extraordinary and drastic remedy, one [ ] should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'"  *Boucher v. Sch. Bd. of the Sch. Dist. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original)).  In fact, a party seeking a preliminary injunction must submit "substantial proof"—a quantum of evidence that is "much higher" than even that required to prevail on a motion for summary judgment.  *Mazurek*, 520 U.S. at 972.  Because a preliminary injunction is an extraordinary remedy, the court's power to issue such relief should be exercised sparingly.  *See Rizzo v. Goode*, 423 U.S. 362, 378 (1976).

A preliminary injunction is warranted only if the movant can prevail at each of two distinct phases:  a threshold phase and a balancing phase.  *Girl Scouts*, 549 F.3d at 1085-86.  At the threshold phase, Comcast must demonstrate that (1) its case has a likelihood of success on

---

[2]  The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions. *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001)  (citing *Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.*, No. 01 C 585, 2001 WL 128164, at *1 (N.D.Ill. Feb. 9, 2001).

the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the preliminary injunction is not granted. *E.g.*, *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). If Comcast fails to carry this burden, then the "court's inquiry is over and the injunction must be denied." *E. St. Louis Laborers Local 110 v. Bellon Wreckage & Salvage*, 414 F.3d 700, 703 (7th Cir. 2005).

Even if Comcast survives the threshold phase, the Court must proceed to consider the harm that would result to DIRECTV if the preliminary injunction is granted, balance that against the harm Comcast will suffer if the preliminary injunction is denied, and also consider how granting or denying such relief would impact the public interest. *E.g.*, *Long*, 167 F. Supp. 2d at 990. Here, Comcast fails to make the substantial showing necessary to obtain this extraordinary relief. No temporary restraining order should issue.

## I.    THERE IS NO TRUE EMERGENCY HERE, AS DEMONSTRATED BY COMCAST'S MULTI-MONTH DELAY IN RAISING ANY ISSUE WITH THE NFL SUNDAY TICKET AD CAMPAIGN.

More than two months have passed since DIRECTV began this advertising campaign that Comcast now wants a TRO to stop. Comcast's delay demonstrates that there is no urgency that would warrant emergency (or any) relief. *See Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1122-23 (7th Cir. 1983); *Stokley-Van Camp, Inc. v. Coca-Cola Co.*, 1987 WL 6300, at *3 (N.D. Ill. Jan. 30, 1987). The first of the DIRECTV advertisements that Comcast challenges in this lawsuit began running on July 8, 2011. Stern Decl. ¶ 5. Comcast did nothing for four weeks and is now trying to convince the Court that a TRO is necessary. In fact, as explained below, Comcast's delay extends even further than the four weeks that have elapsed since the advertisements at issue first began running. Comcast knew or should have known about

DIRECTV's "NFL Sunday Ticket at no extra charge" campaign several months ago, given the following facts:

- **April 2011 (four months ago):** Various television networks, including Comcast's majority-owned subsidiary NBC, received preliminary storyboards of the same television commercials now at issue in this lawsuit, indicating, "For the first time ever, NFL Sunday Ticket is included when you switch to DIRECTV."

- **May 31, 2011 (two months ago):** DIRECTV advertised on its website that NFL Sunday Ticket is "INCLUDED FOR THE FIRST TIME! AT NO EXTRA CHARGE", and included all the same types of disclosures that Comcast now argues require an emergency order to shut down. Stern Decl. Ex. 1.

- **June 2011 (two and a half months ago):** DIRECTV's Father's Day advertisement included NFL Sunday Ticket offer: "INCLUDED at no extra charge NFL SUNDAY TICKET." *Id*. Ex. 2.

- **June 2011 (two months ago):** DIRECTV's national advertising circulars included "NEW! NFL SUNDAY TICKET NOW INCLUDED!" offers.

- **June 22, 2011 (six weeks ago):** Banner advertisement (with terms and conditions) alongside spoof TV show trailer stating, "NFL SUNDAY TICKET IS **INCLUDED** WHEN YOU SIGN UP FOR DIRECTV." (*available at* www.footballcops.com).

- **June 29, 2011 (five and a half weeks ago):** Comcast affiliate NBC provided DIRECTV written approval for DIRECTV NFL Sunday Ticket commercial.

Thus, DIRECTV has been advertising its "NFL Sunday Ticket at no extra charge" offer for more than two months. And even after the first television advertisement at issue in this case aired on July 8, Comcast waited another four weeks to file this motion. Moreover, during this latest delay, Comcast did not engage in any meaningful discussions with DIRECTV regarding Comcast's concerns. Indeed, Comcast filed this motion despite the fact that the complained-of radio broadcasts had stopped over a week ago, and one of the television commercials at issue had been tweaked at the NFL's and Comcast's request. The Court should deny Comcast's proposed TRO because of Comcast's unreasonable delay alone. *See Shaffer*, 721 F.2d at 1122-23; *Stokley-Van Camp*, 1987 WL 6300 at *3.

## II.    COMCAST DOES NOT HAVE A LIKELIHOOD OF SUCCESS ON THE MERITS.

If Comcast cannot demonstrate likelihood of success on the merits, its motion for temporary restraining order must be denied.  *See Long*, 167 F. Supp. 2d at 990 (citing *Ty, Inc.*, 237 F.3d at 895).   Contrary to Comcast's allegations that DIRECTV's advertisements are "literally false," the advertisements are in fact literally true and make all the proper disclosures.

### A.    "NFL Sunday Ticket Included At No Extra Charge" Is True and Every Condition That Comcast Asserts Is "Material" To The Offer Is Included In The Ads.

Comcast's assertion that "NFL Sunday Ticket Included At No Extra Charge" is "a blatant falsity" is based solely on the fact that new customers will enter into the same 2-year service agreement that all new DIRECTV customers enter into, *regardless of the offer*, and the fact that NFL Sunday Ticket will auto-renew in 2012, *which is and has been true for all sports programming packages at DIRECTV.  See* Mot. at 5.  But neither the 2-year agreement nor the auto-renewal of a sports programming package is unique to this offer for NFL Sunday Ticket.  In fact, as disclosed in the example advertisements included with the Stern Declaration, "All offers require 2-year agreement."  Stern Decl., Exs. 1-2.  Nothing about the basic 2-year agreement required of all new customers, nor the auto-renewal of all sports programming packages, changes the fact that new customers can indeed get NFL Sunday Ticket at no *extra* charge.

Comcast's argument that DIRECTV is nonetheless misleading people to believe that they can receive NFL Sunday Ticket for "free" without any terms and conditions, perhaps without even getting DIRECTV programming service at all, borders on absurd.  DIRECTV uses the phrase "no extra charge" to describe the NFL Sunday Ticket offer, and while Comcast transposes that phrase with "free" as if it means the same thing, Comcast cannot dispute that it is literally true that NFL Sunday Ticket is being offered at no extra charge.  The ordinary meaning of the

7

word "extra" is "more than is due, usual or necessary; additional." http://www.merriam-webster.com/dictionary/extra. That means, of course, that there are charges that are "usual or necessary" and that already will apply, but there will be nothing "additional" for NFL Sunday Ticket. *Id.*

None of the cases Comcast cites suggests that an advertisement containing the phrase "no extra charge" would be governed by the FTC Free Guide. Indeed, the cases Comcast relies on concerned disclosures that were hidden, or that contradicted the meaning of the advertisement. *See Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 464 (D. N.J. 2009) (concerning pharmaceutical advertisements that misrepresented "supporting" medical studies); *Euro-Pro Operating LLC v. Euroflex Americas*, 2008 WL 5137060, at *6 (S.D. N.Y. Dec. 8, 2008) (falsely stating a product was "EPA tested and approved" when it had not been EPA tested or approved).

In fact, the same argument Comcast makes here was rejected in a similar case regarding DIRECTV's disclosure of programming service prices. *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 2007 WL 1138879 (S.D.N.Y. April 16, 2007). The *Time Warner* court denied Time Warner's motion for a preliminary injunction related to DIRECTV's allegedly small-print disclosures in violation of the Lanham Act. 2007 WL 1138879, at *1-2. The court distinguished the primary case Comcast relies on here, *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson Merck Consumer Pharm. Co.*, 906 F. Supp. 178 (S.D N.Y. 1995), finding that SmithKline concerned a footnote disclaimer on the bottom corner of a chart in an advertisement that was "insufficient to remedy the clear and unequivocally false message the chart conveyed." *Id.* at *4 n.6. The DIRECTV disclosure, on the other hand, was "not inconspicuously located, as it is clearly visible at the bottom of the screen, and [ ] viewers will

not tend to overlook it." *Id.* The Court further found that, even though "the small print of [DIRECTV's] disclaimer may leave some clarity to be desired, the pricing information provided in the commercials is not false[.]" *Id.* at \*4. The Court here should similarly reject Comcast's argument.

Moreover, both the 2-year agreement and auto-renewal conditions that Comcast asserts are material to the offer, but are supposedly missing from the ads, are indeed disclosed.

**DIRECTV Television Commercials.** Each condition associated with the NFL Sunday Ticket Included At No Extra Charge offer that Comcast itself has deemed "material" in its Complaint is indeed disclosed in the three challenged commercials. Comcast chose to include as exhibits to its Complaint illegible versions of storyboards of each commercial, to create an impression that some disclosures were not made at all, when others were supposedly illegible. *See* Compl., Ex. A, Ex. B, Ex. C. But as the screen shots of each challenged commercials attached hereto as Ex. 1 (Banker), Ex. 2 (Dip), and Ex. 3 (Keys, revised) show quite clearly,[3] each of Comcast's allegations about DIRECTV's "NFL Sunday Ticket Included At No Extra Charge" offer is clearly refuted by the commercials themselves.

| Allegation | Truth |
|---|---|
| "Banker" commercial does not clearly disclose that NFL Sunday Ticket free offer requires "a two-year contract with hefty termination fees" (Compl. ¶1) | Ex. 1 (Banker) at 1: **"2 yr. agreement req'd."**<br><br>*Id.* at 2: **"Conditions apply. Visit DIRECTV.com for details"** |

---

[3] Original versions of the Banker, Dip, and Keys (revised) television advertisements are attached hereto on DVDs as Exs. 4, 5, and 6, respectively.

| Allegation | Truth |
|---|---|
| "Banker" commercial does not clearly disclose that if subscriber accepts NFL Sunday Ticket free offer, NFL Sunday Ticket will automatically renew in the second year at full price (Compl. ¶1) | *Id.* at 2: **"2012 renews at full price"** |
| "Dip" commercial does not clearly disclose that NFL Sunday Ticket free offer requires "a two-year contract with hefty termination fees" (Compl. ¶1) | Ex. 2 (Dip): **"2 yr. agreement req'd."** <br><br> *Id.* **"Conditions apply. Visit DIRECTV.com for details"** " |
| "Dip" commercial does not clearly disclose that if subscriber enrolls in NFL Sunday Ticket free offer, NFL Sunday Ticket will automatically renew in the second year at full price (Compl. ¶1) | *Id.*: **"2012 renews at full price"** |
| "Keys" commercial does not clearly disclose that NFL Sunday Ticket free offer requires "a two-year contract with hefty termination fees" (Compl. ¶1) | Ex. 3 (Keys, revised): **"2 yr. agreement req'd."** <br><br> *Id.*: **"Conditions apply. Visit DIRECTV.com for details"** |
| "Keys" commercial does not clearly disclose that if subscriber enrolls in NFL Sunday Ticket™ free offer, NFL Sunday Ticket will automatically renew in the second year at full price (Compl. ¶1) | *Id.*: **"2012 renews at full price"** |

**DIRECTV's Website Advertisements.** In addition, DIRECTV's website also discloses the terms and conditions of the NFL Sunday Ticket offer. The 2-year agreement, qualified programming package, and automatic renewal provisions, among others, are disclosed directly under the offer statement on directv.com at a link labeled "Offer Details." *See* www.directv.com.[4] When a viewer moves the mouse over the "Offer Details" link, the terms

---

[4] With less than 19-hours' notice of the hearing on Comcast's TRO motion, DIRECTV only cites its website in this brief, but will be able to provide screenshots of the websites and advertisements referenced along with sworn declarations in subsequent briefing.

and conditions of the offer are automatically displayed. *Id.* The plain language of the terms and conditions refutes Comcast's allegations about the programming commitment and early cancellation, because the fee is clearly disclosed. *Id.* ("All offers require 24 month agreement. If you fail to maintain you programming agreement, you agree DIRECTV may charge you a pro-rated fee of up to $480 ($20 per month remaining)…").

Additionally, the page displaying DIRECTV's packages discloses each of the material terms that Comcast claims were omitted. The price of each package is displayed next to capitalized letters stating "AFTER REBATE WITH 24-MONTH COMMITMENT." *See* http://www.directv.com/DTVAPP/new_customer/base_packages.jsp?footernavtype=-1. The programming commitment and early cancellation fee is again disclosed at the bottom of the page. *Id.* Clicking a hyperlink labeled "Additional Offer Details" displays a "pop up" disclaimer setting forth additional terms of the NFL Sunday Ticket offer, including specifics related to the auto-renewal of NFL Sunday Ticket. *See id.*[5] ("**NFL SUNDAY TICKET and NFL SUNDAY TICKET To-Go will automatically continue each season at special renewal rates unless customer calls to cancel prior to start of season.**") (emphasis in original). And contrary to Comcast's unsupported assertion (*see* Mot. at 5), although NFL Sunday Ticket, like all sports packages, will auto-renew until cancelled, customers taking advantage of this year's NFL offer are not required to purchase NFL Sunday Ticket in 2012.

Comcast cannot succeed on the merits because NFL Sunday Ticket is indeed available at no extra charge and because the ads actually disclose the terms and conditions of the offer.

---

[5] Offer page available at: http://www.directv.com/DTVAPP/new_customer/base_packages.jsp?footernavtype=-1#_h.

**B.** **"That's The Only Game We Get With Cable" Is Also Literally True In The Context Of The "Dip" Commercial, As Comcast Essentially Concedes In Its Motion.**

Comcast also challenges a single line in one of the NFL Sunday Ticket commercials, referred to as the "Dip" commercial (in reference to the chips and dip on the coffee table), in which four guys are playing video games after the football game they had watched ended. *See* Mot. at 8-9. When asked by the Deion Sanders fairy, "What about all the other games?", one of the guys replies, "That's the only game we get with cable." Comcast argues that this one sentence is "an outright lie." Mot. at 8. Yet, Comcast goes on to explain to the Court the exact reason why that sentence, in the context it was spoken, is in fact literally true.

As Comcast explains, the cable provider's practice is to broadcast "at least four separate NFL football games every Sunday of the regular season—at 1 pm, 4 pm, and 8 pm, including one 'double-header.'" *Id.* at 9. Comcast does not disclose, however, that the 8 p.m. game is the national Sunday Night Football game on NBC, so there are no NFL Sunday Ticket implications for that game. Rather, NFL Sunday Ticket delivers all the regular season out-of-market games that are not broadcast nationally on NBC (Sunday Night Football), ESPN (Monday Night Football) or NFL Network (mid-season Thursday Night Football). The relevant comparison to NFL Sunday Ticket is that, on a regular Sunday, Comcast broadcasts two games at one time (one on CBS and one on Fox, at either 1 p.m. or 4 p.m.), and one game during the other time slot, which will be the local area team's game (*e.g.* the Chicago Bears), by itself, without any other competing game (subject to blackout rules). When that local area team's game is being televised, that is the only game a cable customer like the actors in the Dip commercial get with cable. And that is all the Dip commercial says: "That's the only game we get with cable." That comment is literally true, and one that any football fan, particularly the "NFL Fans" who Comcast refers to as the "primary segment of the public . . . who will respond to the

12

advertisement" (Mot. at 13), would understand given how local area teams' games are televised on cable, over-the-air, or by any other method other than via DIRECTV NFL Sunday Ticket.[6]

Comcast's arguments regarding the Dip commercial are wrong and should be disregarded.

### C. DIRECTV's "NFL Sunday Ticket Included At No Extra Charge" Commercials Comply With The AG Judgments, And No AGs Have Complained About These Ads.

Comcast's Motion relies quite heavily on the mere existence of the Agreed Final Judgments entered into between DIRECTV and the State AGs as somehow entitling Comcast to relief. *See* Jirgal Decl. Ex. S (Illinois Agreed Final Judgment, 12/16/00). Comcast's Motion, however, lacks any specifics. Indeed, Comcast refers to just one subsection of the Agreed Final Judgment (§ 6.9(e)) in its entire brief, yet without any allegation that DIRECTV's ads do not comply with it (because it would be untrue). *See* Mem. at 12. Although Comcast never mentions that the Judgment "may only be enforced by the parties hereto" (§ 9.3), DIRECTV nevertheless responds to Comcast's arguments and explains below that the "NFL Sunday Ticket Included At No Extra Charge" commercials comply with all relevant sections of these stipulated Judgments.

---

[6] Because the sentence in the Dip commercial is literally true, as is the statement that customers can get NFL Sunday Ticket included at no extra charge, Comcast would have to demonstrate that the advertisements are impliedly false. *See BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1089 (7th Cir. 1994). Whether an advertisement is impliedly false is determined by the customers' perceptions, and some evidence of actual consumer confusion (such as the results of a customer survey) is generally required. *See id.* "While 'full blown consumer surveys or market research are not an absolute prerequisite' at the preliminary injunction state, plaintiffs were required to provide 'expert testimony or other evidence' to support a finding that these statements were true but misleading." *QVC, Inc. v. Your Vitamins, Inc.*, 714 F. Supp. 2d 291, 299 (D. Del. 2010). The *QVC* court denied plaintiff's motion for temporary restraining order because the evidence plaintiff submitted—blog post re hair product at issue—did not sufficiently demonstrate customer confusion. *Id.* at 299, 303. *See also Herbko Int'l, Inc. v. Gemmy Indus. Corp.*, 916 F. Supp. 322 (S.D. N.Y. 1996) (denying preliminary injunction because of lack of evidence of consumer confusion). Unlike the *QVC* and *Herbko* cases, which presented some but ultimately not enough evidence of consumer confusion, Comcast presents *no* evidence of consumer confusion. Even the case cited by Comcast, *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992), included anecdotal accounts of customer confusion. Comcast has made no such showing in its motion.

Sections 6.5-6.13 set forth the Advertising Provisions. In particular, Section 6.9 provides requirements for advertisements involving featured offers, like NFL Sunday Ticket. For those ads, DIRECTV shall disclose material terms, such as if the offer requires a rebate (§ 6.9(a)), requires an agreement term (§ 6.9(b)), requires periodic lease or service fees like HD or DVR fees (§ 6.9(c)), involves local channels (§ 6.9(d)), or is for a promotional period (§ 6.9(e)). In addition, Section 6.11 includes additional potential requirements, such as whether the offer is limited to new customers, requires credit approval, or involves sporting events that may be blacked out. *See* § 6.11(a), (b), (g). And further, the Judgment provides some flexibility when an advertisement has "limited space" that makes it difficult to reasonably make all disclosures "Clearly and Conspicuously" (as that term is defined). *See* § 6.13, § 4.13. In those instances, and with respect to NFL Sunday Ticket advertisements, the relevant disclosures in Section 6.9 need to be made along with a phone number or website for the consumer to access "the applicable full terms and conditions." *Id.*

The required disclosures are contained in each of the three commercials that are the subject of Comcast's Complaint. The storyboards attached as Exhibits A-C to the Complaint include nine low-resolution screenshots of the commercials with the text of the voiceovers and disclosure text allegedly typed below. *See* Compl. Exs. A-C. But real-resolution color screenshots of the commercials, attached as Exs. 1 (Banker), 2 (Keys), and 3 (Dip) and which DIRECTV will have available at the hearing, establish that DIRECTV discloses these terms in every one of its commercials.

Moreover, to ensure compliance with the Agreed Final Judgments, DIRECTV has provided extensive training to key individuals in its sales and marketing groups regarding the provisions included in the Judgments. Stern Decl. ¶ 9. In addition, all new advertisements and

revisions are sent through a rigorous online review system to ensure that the ads include the proper disclosures. *Id.* No advertisement at DIRECTV can be disseminated without first going through this review process. *Id.* And no State AG has raised any issue or complaint asserting that DIRECTV's NFL Sunday Ticket advertisements do not comply with the Judgments. As demonstrated, DIRECTV's NFL Sunday Ticket Included At No Extra Charge ads comply with the Agreed Final Judgments with the AGs. Comcast's accusations to the contrary are baseless.

### D. Consumers Are Made Aware of the Terms and Conditions Multiple Times Before Finalizing the Transaction.

Although a myriad of advertising disclosures are indeed provided, DIRECTV wants to make clear to the Court that no customer can magically get NFL Sunday Ticket just from viewing the challenged advertisements. Each new customer must go through the new customer ordering process, either online or via 1-800-DIRECTV. Through both avenues, further detailed disclosure regarding DIRECTV's NFL Sunday Ticket offer are provided when the transactions are finalized. Like the disclosures in DIRECTV's advertisements, these additional disclosures preclude Comcast from showing any likelihood of success on the merits.

**Website Sign-Up Disclosures.** When customers sign up for DIRECTV service at directv.com, they receive disclosures at multiple stages. First, there are the disclosures described above, *supra* II.A, that are associated with advertisements on directv.com. Next, after a customer selects a programming package, the customers' online shopping cart displays a link stating, "What is my Agreement?" next to their package selection.[7] When the customer hovers the mouse over that link, a window appears explaining, "You agree to maintain DIRECTV service with any base package of $29.99/mo or above for 24 consecutive months." At the

---

[7] Shopping cart page available at: https://www.directv.com/DTVAPP/new_customer/shopping_cart.jsp#_h (last visited August 5, 2011).

bottom of the same page, DIRECTV discloses the programming commitment again, along with other offer details. There is also an additional hyperlink that displays a pop-up window with the full offer details.

Finally, after clicking the "Check Out" link, a customer must affirmatively click and agree to the following statement when providing credit or debit card information to complete the order: "By clicking 'Submit Order' I agree to these Terms & Conditions." The terms and conditions are accessible via hyperlink. The first page of the Terms and Conditions confirms the customer's understanding that "If you fail to maintain your 24-month programming commitment, you agree that DIRECTV may charge you a prorated fee of up to $480." In addition to the disclosures at each of these steps, DIRECTV's website also has a "Help" section which provides explanations about the programming commitment, early cancellation fee, and the NFL Sunday Ticket renewal provision. *See* support.directv.com.

Thus, every disclosure that Comcast alleges was not properly disclosed in fact is disclosed multiple times, capped by requiring the customer to affirmatively agree with the terms and conditions of his or her subscription. Comcast's claims to the contrary are without merit.

**1-800-DIRECTV Sign-Up Disclosures.** As with customers placing an order on www.directv.com, customers calling 1-800-DIRECTV to subscribe by phone also receive multiple disclosures of the terms and conditions before completing their orders. DIRECTV's answer center scripts include each item Comcast asserts is not disclosed. DIRECTV's Customer Service Representatives (CSRs) are trained and instructed to confirm that each customer understands that he or she is entering a programming commitment of two years, and that if he or she prefers to cancel before the service term ends, they may be subject to prorated fee:

> "Please say yes to confirm that you understand that you are leasing your equipment and you must fulfill your DIRECTV service agreement for 24 months

16

or be subject to an early cancellation fee of $20 per month for each month not completed."[8]

CSRs are also instructed to give express disclosures of the NFL Sunday Ticket renewal provision: "These services will automatically continue each year at a special renewal rate provided DIRECTV carries them, unless you call to cancel prior to the start of the season," and "Seasonal sports subscriptions automatically continue each year at a special renewal rate, provided DIRECTV carries these services, unless you cancel prior to the start of the season."

DIRECTV's multiple disclosures of the terms and conditions of the NFL Sunday Ticket offer on its website and by telephone confirm that DIRECTV's advertisements comply with all applicable advertising law. No temporary restraining order should be issued enjoining these lawful, proper advertisements.

### E.    DIRECTV's Disclosures Are Nearly Identical to Comcast's Disclosures.

The disingenuous nature of Comcast's allegations is underscored when comparing DIRECTV's disclosures with Comcast's disclosures. Comcast's website discloses no terms and conditions on the page advertising its various plans. For example, Comcast's "Digital Starter with Showtime" plan only lists in bullet points the "Package Details," and then provides three hyperlinks to "View Channel Lineup," "Details and Restrictions," and "Learn More."[9] Only after clicking on "Details and Restrictions" does a pop-up window appear stating that the plan is "limited to new residential customers" and "[t]wo-year contract required."

These conditions are two of the same terms that Comcast complains DIRECTV did not fully disclose. *See* Compl. ¶ 18. DIRECTV's website, however, discloses these exact conditions more readily than Comcast in that DIRECTV requires no click of the mouse. The DIRECTV

---

[8]  DIRECTV will have copies of the full scripts available at the hearing.

[9]  Available at:  https://www.comcast.com/shop/buyflow2/products.cspx?inflow=1 (last visited on August 4, 2011).

customer only has to hover the mouse over "Offer Details" for a pop-up to appear that clearly states that the offer applies to "[n]ew customers only" and "require[s] 24-month agreement."  *See* www.directv.com (last visited on August 4, 2011).  And DIRECTV's "Offer Details" is the same blue color that changes the mouse pointer to a hand indicating a hyperlink that Comcast's website uses for "Details and Restrictions."   It is therefore unclear what Comcast is actually complaining about ("a hyperlink (which is not immediately obvious)" (Compl ¶ 19)) when DIRECTV uses the same style of hyperlink as Comcast does.

### F.  A Temporary Restraining Order Is Moot With Respect To Certain DIRECTV Advertisements.

Comcast seeks to enjoin advertisements that DIRECTV has either already altered to address Comcast's and the NFL's request (despite DIRECTV's disagreement as to the merit of Comcast's complaint) or that DIRECTV has ceased airing altogether for independent reasons. For example, to make clear to the viewer that the Eagles fan in the "Keys" commercial is not in Philadelphia, the commercial now airs with the words "10am, Los Angeles" on the screen at the very start of the commercial.  Stern Decl. ¶ 7.  This change was made at the request of the NFL, and after receiving a letter from Comcast asserting concerns about the advertisement.  *Id.* Counsel for DIRECTV communicated this change a few days ago to counsel for Comcast, and counsel for Comcast led DIRECTV to believe the change would be sufficient.   Nevertheless, without disclosing to the Court that this commercial has been changed, Comcast still claims that the Keys commercial constitutes false advertising.   DIRECTV's voluntary change renders Comcast's request for a temporary restraining order with respect to the Keys advertisement moot, and the emergency motion should be denied.  *C.f. Fed'n of Advertising Indus. Representatives v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003) (noting that repeal of

contested ordinance moots plaintiff's injunction request, absent evidence that the defendant plans to or already has reenacted the challenged law or one substantially similar).

Similarly, Comcast's complaints about radio broadcasts are also moot because DIRECTV stopped using live reads by radio personalities to promote NFL Sunday Ticket over a week ago. Stern Decl. ¶ 8. On July 26, 2011 DIRECTV provided radio stations with "readers" that radio personalities could use as on-air talking points. *Id.* Two days later, on July 28, 2011, after learning that the radio personalities were taking too many liberties in delivering the message, and not adhering to the talking points, DIRECTV stopped these ads. *Id.* There is no need to restrain DIRECTV from airing any advertisements it has already stopped airing.

## III. BALANCE OF HARMS WEIGHS IN FAVOR OF DENYING THE TEMPORARY RESTRAINING ORDER.

While Comcast's multi-month delay demonstrates that there is no emergency here, and Comcast has fallen far short of demonstrating a likelihood of success on the merits, the temporary restraining order should not issue in any event because Comcast has not proven that it has suffered or will suffer irreparable harm.

Comcast argues that irreparable injury is presumed "where a defendant has engaged in literally false comparative advertising," and even in the absence of this presumption, it is irreparably injured because of a purported loss of its customer base. Mot. at 14. First, Comcast is not entitled to any presumption, because DIRECTV's advertisements are literally true. Second, the Seventh Circuit does not recognize harm under the Lanham Act without some proof of injury in fact or future harm. *See B. Sanfield, Inc. v. Finlay Jewelry Corp.*, 258 F.3d 578, 581 (7th Cir. 2001) (J. Easterbrook). In *Sanfield*, Judge Easterbrook stated that the notion that "actual injury is simply unnecessary" after falsity is proven "can't be squared with Article III of the Constitution, which makes injury in fact an essential component of a case or controversy."

19

*Id.* In fact, "a private plaintiff must show, among other things, that it 'has been or is likely to be injured as a result of the false statement[.']" *Id.* (citing *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998)). Judge Easterbrook continued, the "likelihood of future injury is no less a fact than likelihood of confusion," and can be proven by showing "direct diversion of sales from [the plaintiff] to defendant or by a loss of goodwill associated with its products." *Id.* (internal quotation omitted).

Comcast makes no such showing here. Instead, it just argues that it is entitled to a presumption. And Comcast's alternative argument—that declining market share constitutes irreparable harm—is wholly unsupported. Comcast's sole "evidence" of its declining market share is a conclusory statement in the Intermaggio Declaration that "there is a substantial likelihood that countless members of the consuming public—a substantial number of whom are current Comcast customers—will be convinced" to switch to DIRECTV. Intermaggio Decl. ¶ 20. Similarly, the only "evidence" of loss of goodwill is pure speculation by Mr. Intermaggio that the DIRECTV advertisements "already have caused Comcast a substantial loss of goodwill and loss of control of reputation[.]" *Id.* ¶ 20. This is insufficient under *Sanfield*.

On the other hand, DIRECTV faces irreparable harm if a TRO issues, and thus the balancing of harms weighs decidedly in favor of denying the motion. *See Long*, 167 F. Supp. 2d at 990 (balancing test). The NFL Sunday Ticket offering is a significant asset for DIRECTV and the exclusive rights to offer it came at a substantial cost. This year more than any other, after the NFL lockout cast doubt on the season for several months, DIRECTV's ability to advertise the NFL Sunday Ticket offer during this shortened time frame is critical. If DIRECTV is restrained in some manner from continuing to truthfully advertise its NFL Sunday Ticket offer during this

20

shorter period despite the unlikelihood that Comcast will succeed on the merits, DIRECTV will suffer irreparable harm.

## <u>CONCLUSION</u>

For the foregoing reasons, DIRECTV respectfully requests that Comcast's emergency motion for temporary restraining order be denied.

Dated:  August 5, 2011          Respectfully submitted,

          /s/  Mark A. Pals
          Mark A. Pals, P.C.
          Paul R. Garcia, P.C.
          Tom M. Monagan
          KIRKLAND & ELLIS LLP
          300 North LaSalle Street
          Chicago, Illinois 60654
          Telephone:  (312) 862-2000
          Facsimile:  (312) 862-2200

          Melissa D. Ingalls (*pro hac vice* to be filed)
          Robyn E. Bladow (*pro hac vice* to be filed)
          KIRKLAND & ELLIS LLP
          333 South Hope Street
          Los Angeles, CA 90071
          Telephone:  (213) 680-8400
          Facsimile:  (213) 680-8500

          *Attorneys for Defendant DIRECTV, Inc.*