UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMCAST CABLE COMMUNICATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DIRECTV INC., <br><br> Defendant. <br> _____ | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 11 CV 05284 <br><br> Honorable Ruben Castillo <br><br> JURY TRIAL DEMANDED |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF COMCAST'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

NY912720.10
207716-10001

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

I. COMCAST ACTED IMMEDIATELY TO ENJOIN DIRECTV'S FALSE ADVERTISING CAMPAIGN ................................................................................ 4

II. THE PRINCIPAL CLAIMS OF DIRECTV'S ADVERTISEMENTS ARE FALSE AND INHERENTLY MISLEADING ................................................................ 6

    A. Comcast Customers Can Watch Multiple NFL Games Every Sunday ................... 6

    B. NFL Sunday Ticket Is Not Offered "At No Extra Charge" Or "Free" .................... 7

    C. DIRECTV's Purported Disclaimers Do Not Cure The Falsity Of The Claims Of "No Extra Charge" And "Free" .............................................................. 9

        1. Many Of DIRECTV's Advertisements Contain No Disclaimers ............. 10

        2. DIRECTV's System Of Purported Disclaimers Has Been Rejected Already By The Illinois Attorney General And Numerous Courts And Agencies Nationwide ............................................ 10

        3. DIRECTV Cannot Rely On Subsequent Correction Of Its False Ads ................................................................................................................ 13

III. DIRECTV'S OPPOSITION DOES NOT EXPLAIN AWAY THE IRREPARABLE HARM COMCAST HAS AND WILL CONTINUE TO SUFFER IF THE CAMPAIGN IS NOT ENJOINED ....................................................... 15

CONCLUSION ........................................................................................................................ 16

# **TABLE OF AUTHORITIES**

                                                                                                                 **Page(s)**

*In the Matter of America Online, Inc.*,
    125 F.T.C. 403 (Mar. 16, 1998) ............................................................................................. 11

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
    258 F.3d 578 (7th Cir. 2001) ................................................................................................ 15

*BASF Corp. v. Old World Trading Co.*,
    41 F.3d 1081 (7th Cir. 1994) ................................................................................................ 14

*Genderm Corp. v. Biozone Labs.*,
    No. 92-C-2533, 1992 WL 220638 (N.D. Ill. Sept. 3, 1992) ................................................. 14

*Grossbaum v. Indianapolis-Marion County Bldg. Auth.*,
    63 F.3d 581 (7th Cir. 1995) .................................................................................................... 6

*Ideal Indus., Inc. v. Gardner Bender, Inc.*,
    612 F.2d 1018 (7th Cir. 1979) ................................................................................................ 6

*Johnson & Johnson v. GAC Int'l, Inc.*,
    862 F.2d 975 (2d Cir. 1988) ................................................................................................. 14

*Milwaukee Police Ass'n v. Jones*,
    192 F.3d 742 (7th Cir. 1999) ................................................................................................ 10

*Pebble Beach Co. v. Tour 18 I, Ltd.*,
    942 F. Supp. 1513 (S.D. Tex. 1996), *aff'd*, 155 F.3d 526 (5th Cir. 1998) ............................. 14

*In the Matter of Prodigy Servs. Corp.*,
    125 F.T.C. 430 (Mar. 16, 1998) ............................................................................................. 11

*Promatek Indus. v. Equitrac Corp.*,
    300 F.3d 808 (7th Cir. 2002) ................................................................................................ 15

*Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*,
    586 F.3d 500 (7th Cir. 2009) ................................................................................................ 15

*Time Warner Cable, Inc. v. DirecTV, Inc.*,
    No. 06 Civ. 14245, 2007 WL 1138879 (S.D.N.Y. Apr. 16, 2007) ........................................ 13

*Ty, Inc. v. The Jones Group, Inc.*,
    237 F.3d 891 (7th Cir. 2001) .................................................................................................. 6

## **INTRODUCTION**

DIRECTV's opposition makes no meaningful attempt to dispute the central falsity of the advertising claims it is currently using to disparage Comcast and to lure Comcast's customers to switch to DIRECTV.

First, while DIRECTV's advertisements claim that its NFL Sunday Ticket service is being offered at "no extra charge," and/or "free," in fact, it requires a two-year contractual commitment with new customers automatically rolled into a second season of DIRECTV's expensive Sunday Ticket service, at full price. Despite what DIRECTV's advertisements promise, no customer who signs up as a result of DIRECTV's advertising campaign will get Sunday Ticket service at "no extra charge" for their initial two-year contract term. Second, DIRECTV's convoluted argument that its "Only Game" ad is susceptible of a meaning that is not patently false, is belied by its website which plainly suggests that with cable there is "only one game on Sunday." Third, DIRECTV admits that it was running a blatantly false and extremely disparaging television spot in the greater Philadelphia marketplace that falsely claims that Comcast's cable customers will not have access to all Philadelphia Eagles games, but argues that it should be permitted to continue doing so, now that a brief disclaimer was added to the ad.

DIRECTV focuses nearly all its attention on the "no extra charge" claim, but fails to explain away its inherent falsity: new customers **are** charged for the second of two seasons of NFL Sunday Ticket service for which they are automatically enrolled when they sign up. The only way they can avoid paying this charge, at $335, is to affirmatively opt out of Sunday Ticket service before the first day of the following NFL season—in which case they will lose out on

what they were promised—NFL Sunday Ticket service at no extra charge. DIRECTV has gone to great lengths to conceal or obscure this material condition of its offer from the public.

DIRECTV's offer is inherently deceptive and will injure consumers. As evidenced in the 16-count Consumer Protection Act complaint Washington's Attorney General filed against DIRECTV in December 2009, DIRECTV knows from experience that, every year, a significant percentage of Sunday Ticket subscribers forget to opt out for the next season because of the long gap between football seasons:

> [W]hen a customer subscribes to the "NFL Sunday Ticket" … he or she will be automatically subscribed for the same subscription the following year. Once the season is over, if the customer fails to cancel before the beginning of the next season, he or she will be billed the full rate for a new subscription. Because the customer is unlikely to notice the lack of service after the season is over, it is only at the beginning of the next season that it becomes apparent that the "season ticket" has been automatically renewed. At that point, [DIRECTV does not] permit cancellations. When the customers find a charge for the new "season ticket" on his or her bill, it is already too late to avoid the charge.[1]

That is what makes DIRECTV's NFL Sunday Ticket at "no extra charge" campaign so pernicious. DIRECTV designed the campaign in order to capitalize on its actual knowledge that a large percentage of the new customers it is able to lure away from cable will end up getting charged, and having to pay, for a second full-priced season of Sunday Ticket service even though they did not want to pay for the service, or could not afford it. And none will receive a second season of Sunday Ticket service "at no extra charge." It is false and inherently deceptive for DIRECTV to advertise that NFL Sunday Ticket service is offered for "free" or at "no extra charge."

DIRECTV tries to defend its "no extra charge" claim on the theory that the fine-print "disclaimers" that it includes in some—but not all—ads, and in the maze of disclaimers, contract

---

[1] Supplemental Declaration of Thomas Jirgal ("Supp. Jirgal Decl."), filed concurrently, at Exh. W.

terms, and FAQs on its website, will put a hyper-diligent consumer on notice that she was on the hook for the price of two seasons of Sunday Ticket service, but only receive a credit for one. This argument was already rejected by the country's AGs who insisted that key information such as this be disclosed up-front in the ad copy itself. It fairs no better when tried again here. The irrelevancy of the disclosures is not only clear from the Attorney General injunctions which bind DIRECTV directly but also from generally applicable rules set forth by the Federal Trade Commission, the Illinois Legislature, and the 7th Circuit, all of which forbid the use of footnoted disclosures to limit or contradict the type of aggressive pricing claim that DIRECTV is making.

In addition to the legal irrelevancy of DIRECTV's disclaimer argument, there are no disclaimers at all in a large majority of the advertisements at issue. Only four of the many DIRECTV advertisements that Comcast has brought to the Court's attention include any kind of disclaimer. The others simply advertise Sunday Ticket service for free or at no extra charge without any qualification whatsoever. Nor do the disclaimers have any relevance to DIRECTV's false claims that Comcast only offers its customers one NFL game per Sunday, and that Philadelphia Eagles football games are unavailable to Comcast's Philadelphia-area customers.

Having all but conceded the essential facts forming the basis of Comcast's motion for expedited relief, DIRECTV is left to make hollow procedural arguments about whether its false and misleading advertisements give rise to a "true" emergency and whether its use of faint and fleeting disclaimers somehow renders these ads "merely" misleading. DIRECTV's campaign of lies is harming consumers and is harming Comcast. The Court should reject DIRECTV's efforts to stall and should enjoin DIRECTV's false advertising without further delay.

**ARGUMENT**

I. **COMCAST ACTED IMMEDIATELY TO ENJOIN DIRECTV'S FALSE ADVERTISING CAMPAIGN**

The initiating event for DIRECTV's campaign for NFL Sunday Ticket—and the precipitating event for this litigation—was the resolution of the NFL's labor dispute on July 25, 2011—just two weeks ago. Until that resolution, the 2011 NFL season was in doubt, and following that resolution, press coverage of the NFL has been extensive and fan enthusiasm has been at a fever pitch. It is now clear that DIRECTV was not passively monitoring the labor dispute—to the contrary, its marketing machine was hard at work preparing a massive advertising campaign for NFL Sunday Ticket, for television, radio, and the Internet. Before resolution of the labor dispute, DIRECTV's campaign was different than the current offer of a two-year deal with automatic renewal in 2012. For example, the screenshot at Exhibit 1 to the Stern Decl. (Dkt. No. 17), purportedly from May 31, 2011, provides that "[t]o the extent that there is a 2011 NFL season, customers will be automatically enrolled in an receive **2011 NFL Sunday Ticket** … **at no additional cost**," and that the service "will automatically continue **each season** unless customer calls to cancel prior to start of season." (emphasis added). The present campaign—that is, the subject of this motion and that does not incorporate such language—was not launched in full until a 2011 NFL season was assured on July 25, 2011.

As its Opposition confirms, on July 26, 27, and 28, DIRECTV commenced a media blitz to sign up new customers with a promise of NFL Sunday Ticket service for "free" or for "no extra charge." It launched a series of radio advertisements that falsely claimed that NFL Sunday Ticket was available "at no extra charge," and "free," with no disclaimers or disclosures of any kind. Declaration of Thomas Jirgal (Dkt. No. 8), Exhs. G-J. It launched two brand-new television commercials—both starring Deion Sanders—that repeated the "no extra charge"

claim. *Id.*, Exhs. B, C, E, F. DIRECTV also introduced completely new false claims that tell consumers that Comcast only offers one NFL game per Sunday, and that Comcast does not offer Philadelphia-area customers the ability to watch Philadelphia Eagles football games at all.[2] DIRECTV attacked on the Internet as well, launching a series of banner ads with no disclaimers at all, and updating its website to include Deion Sanders and to embed the "Only Game" ad specifically. As such, DIRECTV's claim that the NFL Sunday Ticket campaign has been running for months—offering only a smattering of storyboards, Internet banner ads, "advertising circulars" and one TV ad in support—is highly misleading at best.

Moreover, after DIRECTV launched its full campaign for NFL Sunday Ticket midway through the week of July 25, Comcast took immediate action. On August 1, 2011—the following Monday—Comcast sent DIRECTV a detailed letter requesting that it immediately cease and desist from its false, misleading and deceptive claims. Jirgal Decl., Exh. O. A second letter followed on August 2. *Id.*, Exh. P. When DIRECTV failed to meaningfully engage Comcast, Comcast filed suit on August 3 and notified DIRECTV that it would seek preliminary injunctive relief. *Id.*, Exh. Q. In response, DIRECTV actually <u>expanded</u> its campaign. On August 3, 2011—the day Comcast filed suit—DIRECTV launched a brand new Deion Sanders television commercial that repeats the false "no extra charge" claim. Supp. Jirgal Decl., at Exhs. X (storyboard and incidence report) and Y (video file). And on August 6, 2011, DIRECTV had the announcer for an Ultimate Fighting broadcast tell consumers that NFL Sunday Ticket "is

---

[2] DIRECTV effectively has admitted that the "Eagles" commercial was misleading and represents that it has modified the advertisement to address this. *See* Opposition at 18-19. Not surprisingly, this modification is ineffective—the only change DIRECTV made to the ad is to insert a fleeting disclaimer, in grey font against a largely grey background, stating that the location is Los Angeles. Such a miniscule disclaimer is wholly ineffective to clear the inevitable confusion that will result from broadcasting this ad in the Philadelphia market.

included when you switch to DIRECTV" without any qualification whatsoever. Supp. Jirgal Decl., Exh. Z (video file).

In sum, DIRECTV's current campaign launched on July 26, and Comcast filed suit on August 3 and filed for preliminary relief on August 4. There has been no delay, let alone the kind of extreme delay that might provide grounds to deny application for a TRO and preliminary injunction. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 902-03 (7th Cir. 2001) (preliminary injunction proper despite eight-month delay); *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 63 F.3d 581, 582 n.5 (7th Cir. 1995) (preliminary injunction entered despite one-year delay); *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979) (preliminary injunction entered despite 37-month delay). Comcast's motion is timely, and DIRECTV's attempt to avoid the merits should be rejected.

## II. THE PRINCIPAL CLAIMS OF DIRECTV'S ADVERTISEMENTS ARE FALSE AND INHERENTLY MISLEADING

### A. Comcast Customers Can Watch Multiple NFL Games Every Sunday

At least one of DIRECTV's television commercials (the "Only Game" Commercial) claims that cable subscribers receive only one NFL football game on regular season Sundays. This is literally false and grossly misleading. As DIRECTV's Opposition does not contest, every Comcast subscriber gets multiple NFL football games every Sunday during the regular season. *See* Motion at 8-9; Intermaggio Decl. ¶ 16. DIRECTV attempts to explain away the falsity by arguing that "any football fan" would understand the statement "That's the only game we get with cable" to apply only to a hypothetical scenario of a local-market team at a particular time slot during the day. Opposition at 12-13. But that, of course, is not what the commercial says. DIRECTV is claiming—literally—that a cable subscriber only gets one NFL game on Sunday.

To the extent further confirmation is needed, as the screenshot shows below, DIRECTV also has embedded this exact commercial on its website, with the title "Only one game on Sunday?"



*See also* Supp. Jirgal Decl. at Ex. GG. There is no ambiguity in DIRECTV's statement—it is making a false and disparaging claim about the services of its direct competitor.

B.      **NFL Sunday Ticket Is Not Offered "At No Extra Charge" Or "Free"**

The centerpiece of DIRECTV's campaign is that NFL Sunday Ticket is currently offered at "No Extra Charge," and/or "free." As DIRECTV's Opposition confirms, this claim is literally false. DIRECTV is making a promotional offer: sign up with DIRECTV now, and get NFL Sunday Ticket "at no extra charge." This is not, however, the whole story—there is only "no extra charge" for NFL Sunday Ticket in 2011, and DIRECTV's actual offer imposes **automatic renewal** of NFL Sunday Ticket in 2012 at **full price**. Under its terms, consumers must make a two-year commitment to DIRECTV, and unless consumers affirmatively contact DIRECTV to cancel NFL Sunday Ticket before the start of the 2012 NFL season, their service—which had been seemingly "free" in 2011—automatically renews, and they will be charged full price for 2012. Moreover, if a consumer misses this deadline—and DIRECTV does not make clear when,

precisely, the deadline will be—not only is the consumer charged full price, that fee is **nonrefundable**. Accordingly, the true offer is not for "free" service at all—in effect, it is a "2 for 1" deal, with two years of TV service required, and two years of a premium subscription service offered for the price of one.

DIRECTV attempts to split semantic hairs, arguing that "at no extra charge" is literally true because consumers are not charged until next year, and relatedly, that the "charge" in 2012 somehow is not "extra" (citing the dictionary) because they are charged the standard price for NFL Sunday Ticket service in 2012, and not an elevated charge. Opposition at 7-8. This is unavailing. As DIRECTV knows, a substantial number of consumers will not affirmatively call DIRECTV to cancel the 2012 NFL Sunday Ticket service and will be automatically renewed in 2012 at full price—indeed, as discussed below, this is the very reason why DIRECTV made its renewal clause "opt out" rather than "opt in." Accordingly, over the two year deal, customers will, in fact, pay for NFL Sunday Ticket. This is both a "charge," and an "extra" one, and the claim that it is "free" or "at no extra charge" is, therefore, patently false.

Indeed, on an earnings call on August 4, 2011—the day <u>after</u> Comcast filed its Complaint—DIRECTV's President and Chief Executive Officer, Michael D. White, expressly confirmed that DIRECTV is not giving away NFL Sunday Ticket for free. Mr. White explained the campaign as follows:

> I think the second and more important strategic point was we had come to the conclusion that it was critically important for us given the long-term contract we have with the NFL at a higher cost and given that it's a fixed cost that we find a way to get more subscribers to sample or try NFL Sunday Ticket to try and get them to renew next year, so this would be in 2012, to build that franchise and that's really the reason that we went with this particular offer.
>
> I think we'll read it as it goes. We're quite pleased with its results so far through the month of July. But the real test will be when we do renewals next year. But it was kind of driven by a strategy of trying to **change the economics of our NFL Sunday Ticket business** and it's a bet on that and I still think it's going to be a

> good bet because the number of folks that come on we then have an opportunity to **roll them to pay next year, 100% of our universe rather than the typical 20, 25% of our quarterly gross adds**. So that's kind of the background on it.

Supp. Jirgal Decl., Exh. AA at 9-10 (transcript).

These are not the words of an outside advertising consultant or low-level copy editor—these are the words of DIRECTV's President and CEO, spoken to DIRECTV's investors and Wall Street analysts to describe how DIRECTV hopes to derive profits. And the message is clear as day: DIRECTV's costs for the NFL Sunday Ticket service have gone up. Accordingly, DIRECTV needed to "find a way to get more subscribers … and get them to renew [in 2012]." *Id*. Offering the service for "free" this year is nothing more than "an opportunity to ***roll*** [new customers] to pay next year." *Id*. (emphasis added). And, of course, the mechanism to get new customers and to "get them to renew" (i.e., "roll") is a hidden automatic renewal clause. *Id.* Apparently, DIRECTV's strategy has been successful—Mr. White is "quite pleased" with the July results, and hopes that the hidden automatic renewal will trap "100% of [DIRECTV's] universe" rather than the "typical 20, 25%" at full price in 2012. In other words, DIRECTV is not just aware that consumers will tend to stay with an automatically renewing service—they are counting on it.

### C. **DIRECTV's Purported Disclaimers Do Not Cure The Falsity Of The Claims Of "No Extra Charge" And "Free"**

The bulk of DIRECTV's arguments is directed, not to the main messages of its advertisements, but to certain purported disclaimers that allegedly cure the literal falsity of the claims of "no extra charge" and "free." These arguments fail for several reasons. First, many of its advertisements contain no disclaimers at all. Second, the existing disclaimers are insufficient. And third, any subsequent corrective measures, which DIRECTV claims form part of the "conversation" with customers after they are induced to call, are both insufficient and irrelevant.

1.  **Many Of DIRECTV's Advertisements Contain No Disclaimers**

DIRECTV's Opposition focuses heavily on DIRECTV's television commercials and its website, which contain certain disclaimers purporting to correct the literal falsity of its ads. But DIRECTV's advertising campaign is much broader than this, and many of its advertisements contain no disclaimers at all. For example, DIRECTV broadcasted a television advertisement during an Ultimate Fighting program falsely claiming that NFL Sunday Ticket "is included when you switch to DIRECTV," **without any qualification or disclaimer of any kind**. Supp. Jirgal Decl., Exh. Z. Similarly, a series of Internet advertisements make the "no extra charge" claim without any disclaimer. *Id*. at Exhs. BB-FF. And, as identified in the Motion, DIRECTV's radio advertisements also make these claims without any disclaimer. Jirgal Decl., Exhs. D-I.[3] All of these advertisements are literally false.

2.  **DIRECTV's System Of Purported Disclaimers Has Been Rejected Already By The Illinois Attorney General And Numerous Courts And Agencies Nationwide**

The bulk of DIRECTV's arguments are directed to its system of disclaimers. Yet this system is patently defective under established law in this Circuit and under clear rules established by the FTC. DIRECTV does not contest that the Court must consider the FTC "Free" Guide under both the Lanham act and the related Illinois state law claims (see Motion at 5-8). As recognized by the FTC, the Illinois legislative, and the courts of this Circuit, offers of "free" services are incredibly powerful and seductive, and therefore, any conditions on such offers must "be set forth clearly and conspicuously **at the outset** of the offer." 17 C.F.R.

---

[3] DIRECTV's claim that is has ceased its radio campaign is of no moment, as voluntary cessation does not moot injunctive relief where—as here—the activity can be readily resumed. *See, e.g.*, *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 747 (7th Cir. 1999). This concern is particularly acute here, because DIRECTV admits it failed to adequately instruct radio announcers not to violate the false advertising laws, and, apparently, also has instructed television broadcasters to do precisely the same thing.

§ 251.1(c) (emphasis added). Consistent with the clear language of the "Free" Guide, the FTC has repeatedly taken enforcement actions against false "free" claims with automatic renewals that are not adequately disclosed at the outset, but are hidden in footnotes and fine print. *See, e.g.*, *In the Matter of Prodigy Servs. Corp.*, 125 F.T.C. 430, 434 (Mar. 16, 1998) (Prodigy liable for advertising "free" Internet service but failing to disclose that customers would be charged if they did not cancel during the trial period); *In the Matter of America Online, Inc.*, 125 F.T.C. 403, 406 (Mar. 16, 1998) (same re. AOL). *See also* Motion at 6-7 (collecting Lanham Act cases to the same effect).

Moreover, DIRECTV's specific system of disclaimers has been rejected already by numerous courts, including Judge Grady here in this District a few years ago. Like now, DIRECTV in 2007 trotted out high resolution version of the challenged advertisement on a large-screen television in an unsuccessful attempt to avoid a preliminary injunction:

> I don't want to forget to mention the disclaimer. The disclaimer is simply not legible. As I recall, it's on the screen for four seconds. But even if it were on the screen for 40 seconds, it wouldn't be legible enough or conspicuous enough for anyone to see it and read it and to understand it. It is an absolutely ineffective disclaimer and does nothing to mitigate against the misleading nature of the [challenged television advertisement].

Supp. Jirgal Decl., Exh FF at 14-15. DIRECTV's conduct here violates existing injunctions against it currently in force in dozens of states, including Illinois.[4] This injunction—along with other consent decrees and injunctions with the Attorneys General of the other 49 states and the District of Columbia—contains detailed limitations on the precise claims at issue in this case. It calls out NFL Sunday Ticket by name, and requires that **any** promotional offer for NFL Sunday

---

[4]DIRECTV argues that Comcast cannot enforce the injunction, and that the Attorneys General have not exercised that power to date (and therefore have acquiesced to the campaign). Yet Comcast is not seeking to *enforce* the injunction—it is simply offering DIRECTV's violations of the injunction as (a) *evidence of intent to deceive*, and (b) evidence of new and independent violations of the Lanham Act and state law. Nor does the absence of current enforcement activity from the Attorneys General help DIRECTV, since its campaign only has been in force for less than two weeks.

Ticket disclose "all material limitations" to the offer "Clearly and Conspicuously"[5] and in "Direct Proximity"[6] to the main offer. Jirgal Decl., Ex. S at ¶ 6.9(b) and (e). Indeed, the injunction is specifically designed to preclude footnoted disclosures. *Id.* at ¶ 4.3 ("A statement or disclosure may not contradict or be inconsistent with any other information with which it is presented.").

DIRECTV's advertisements do not even come close to disclosing the full terms of the offer, including automatic and non-refundable renewal in 2012 at full price, in "Direct Proximity" to the main offer, and "Clearly and Conspicuously." Many of its advertisements—on television, radio, and the Internet—contain no disclaimers of any kind. The television commercials contain illegible and fleeting disclaimers, and none discloses that renewal will be **automatic and non-refundable** in 2012—thus violating, at a minimum, Paragraphs 4.3, 4.5, and 6.6-6.9. Only the website discloses these crucial facts, and only then through a series of inconspicuous nested disclaimers and scrolling windows—also in violation of Paragraphs 4.3 and 6.9 of the injunction.[7]

This can be no surprise to DIRECTV, since its NFL Sunday Ticket advertising blitz employs the **very same tactics** that led to thousands of consumer complaints and the subsequent

---

[5] "Clearly and Conspicuously" is a defined term under the injunction, meaning, *inter alia*, "in such size, color, contrast, location, duration, and audibility that it is readily noticeable, readable, and understandable. A statement or disclosure may not contradict or be inconsistent with any other information with which it is presented. … A video statement or disclosure shall be of a size and shade and appear on the screen for a duration sufficient for a consumer to read and understand the entire statement or disclosure." *Id.* at ¶ 4.3.

[6] "Direct Proximity" is also a defined term under the injunction, meaning "immediately beneath, beside, or adjacent to an offer or term." *Id.* at ¶ 4.5.

[7] DIRECTV employs legalistic gymnastics to attempt to show compliance with the injunction (Opposition at 14-15), but this is ultimately unavailing. DIRECTV simply cites to certain paragraphs relating to advertising, but ignores entirely the substantive restrictions on such advertising found, *inter alia*, in Paragraph 4.3 of the injunction—for example, the requirements of "Direct Proximity," and that footnotes cannot be inconsistent with the main offer.

entry in 2010 of consent decrees against DIRECTV in all 50 states and the District of Columbia. The Washington State Attorney General, the first to sue DIRECTV, received approximately 2,000 consumer complaints concerning DIRECTV, <u>more than any other business operating in that state in recent years</u>. These complaints concerned, among other things, DIRECTV's failure to tell customers that they were entering two-year programming contracts, and that sports programming would automatically renew each year unless the customer took affirmative action to cancel it. Jirgal Decl., Exh. V; Supp. Jirgal Decl., Exh. W at Sec. 9.3 (addressing NFL Sunday Ticket specifically). Thus, not only is DIRECTV up to its old tricks and violating 51 consent decrees and related injunctions, its conduct is even **worse** now. At least in the past, consumers knew they had to pay for NFL Sunday Ticket. Now, they have been baited into subscribing to DIRECTV (and switching from cable) on false promises of a "free" NFL Sunday Ticket, only to have their NFL Sunday Ticket subscription automatically renewed at full price.[8]

### 3. DIRECTV Cannot Rely On Subsequent Correction Of Its False Ads

In addition to its disclaimers, DIRECTV argues that, even if its advertisements are false, this falsity is cured when customers actually decide to enroll—either online through a series of click-throughs, or over the phone, where operators allegedly provide certain disclosures. Opposition at 15-17. This argument is meritless for at least three reasons.

<u>First</u>, it is factually inaccurate. Under DIRECTV's scenario, a customer seeing or hearing one of DIRECTV's advertisements would then visit the web site, where she might navigate and piece together a series of hard-to-find disclaimers and figure out that in reality, NFL

---

[8] Nor can DIRECTV rely on *Time Warner Cable, Inc. v. DirecTV, Inc.*, No. 06 Civ. 14245, 2007 WL 1138879 (S.D.N.Y. Apr. 16, 2007). There, the court found that the principal claim of the advertisements was in fact true; here, the principal claims are literally false, and it is well-settled that disclaimers and footnotes cannot cure literal falsity. *See* Motion at 6-7. The Illinois injunction further confirms, "[a] statement or disclosure may not contradict or be inconsistent with any other information with which it is presented." *Id.* at ¶ 4.3.

Sunday Ticket is not free as promised. It is simply absurd that DIRECTV is relying on this process to cure its failures to clearly and conspicuously disclose.

Second, as a matter of law, whether consumers may have an opportunity to be un-deceived is immaterial, since a literally false advertisement may be enjoined "without reference to the advertisement's impact on the buying public." *Genderm Corp. v. Biozone Labs.*, No. 92-C-2533, 1992 WL 220638, at *13 (N.D. Ill. Sept. 3, 1992) (internal quotations and citations omitted); *see also BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1088-89 (7th Cir. 1994).

Third, even if the foregoing were not true, DIRECTV's argument would still fail because false advertisement claims can be predicated on initial consumer confusion, even if it could conceivably be cleared up in the future. As the Second Circuit held in *Johnson & Johnson v. GAC Int'l, Inc.*:

> We believe the [Lanham] Act's requirement of truthful marketing would be defeated if we were to allow the dubious veracity of a manufacturer's claim to be cured by the fact that the consumer may not make the same mistake twice. The fact that the consumer may have been led to buy the product once, in reliance upon the misleading claim, is sufficient to invoke the protections of the Act.

862 F.2d 975, 980 (2d Cir. 1988) (emphasis added). In *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513 (S.D. Tex. 1996), *aff'd*, 155 F.3d 526 (5th Cir. 1998), the court held that even when disclaimers are conspicuous—and DIRECTV's are not—"the Lanham Act is violated whenever there is confusion in the buying process" (*id.* at 1552), and that "[t]his is still true even if the purchaser's confusion is later dispelled through use or familiarization with the product." *Id.* (emphasis added). DIRECTV cannot claim that the uncertain possibility of a customer's actually locating the true terms on its web site—which terms DIRECTV has intentionally buried in nested disclaimers—cures the literal falsity of its claims of "no extra charge" and "free."

### III. DIRECTV'S OPPOSITION DOES NOT EXPLAIN AWAY THE IRREPARABLE HARM COMCAST HAS AND WILL CONTINUE TO SUFFER IF THE CAMPAIGN IS NOT ENJOINED

Comcast is entitled to a presumption of irreparable harm, both from the literal falsity of DIRECTV's advertisements,[9] and from its intent to deceive consumers (as evidenced, *inter alia*, by its violation of multiple injunctions expressly prohibiting the exact advertising practices, for NFL Sunday Ticket specifically, that DIRECTV is employing now).[10] This intent is further confirmed by the revealing statement from DIRECTV's CEO, discussed above, and it is still further confirmed by the recent launch of a new television commercial on August 3—that is, the very day Comcast filed suit—also featuring Deion Sanders, and containing the same false claim of "No Extra Charge" and the same series of defective disclaimers. Supp. Jirgal Decl., Exhs. X and Y.

In any event, Comcast has established actual injury—*inter alia*, DIRECTV's own CEO has confirmed that Comcast has suffered actual injury from this campaign (*see* Section II.B, *supra* (CEO is "very pleased" with current results)), and DIRECTV has launched a brand-new television ad containing the same "No Extra Charge" claim and the same ineffective set of disclaimers. DIRECTV has presented no evidence of any kind supporting any alleged harm it might suffer from an injunction against this false and deceptive campaign—nor could it, both

---

[9] Indeed, Judge Posner has confirmed that if an ad is patently false or inherently misleading, there is no need for further evidence in a false advertising case. *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512 (7th Cir. 2009) ("[T]he seller who places an indisputably false statement in his advertising or labeling probably did so for a malign purpose, namely to sell his product by lies, and if the statement is false probably at least some people were misled, and since it was a lie why waste time on costly consumer surveys?").

[10] DIRECTV presents a passing argument that irreparable injury cannot be presumed in the Seventh Circuit, citing the court's decision in *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578 (7th Cir. 2001). This decision is wholly inapplicable here, because DIRECTV's CEO has admitted that Comcast has suffered actual harm. Moreover, the court of course may presume irreparable harm under the Lanham Act. *See, e.g.*, *Promatek Indus. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) ("injuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss").

because any harm from a false and deceptive advertising campaign is self-inflicted, and because multiple injunctions already preclude its false advertising.

## CONCLUSION

For the foregoing reasons, Comcast respectfully requests that the Court grant its Application for a Temporary Restraining Order and Preliminary Injunction and enjoin each of the false statements DIRECTV is making in its advertisements.

Date:   August 8, 2011

                                                    Respectfully submitted,

                                                    LOEB & LOEB LLP

                                      By:    /s/ Douglas N. Masters
                                                Douglas N. Masters
                                                Thomas P. Jirgal
                                                321 North Clark Street, Suite 2300
                                                Chicago, Illinois 60610
                                                Telephone: (312) 464-3100
                                                Fax: (312) 464-3111
                                                Christian D. Carbone
                                                Thomas D. Nolan III
                                                Wook Hwang
                                                (*pro hac vice applications forthcoming*)
                                                345 Park Avenue
                                                New York, New York 10154
                                                Telephone: (212) 407-4000
                                                Fax: (212) 407-4990

                                          *Attorneys for Comcast Cable Communications, LLC*

912720

## CERTIFICATE OF SERVICE

I, Douglas N. Masters, hereby certify that on this 8th day of August, 2011, I served the attached **Reply Memorandum of Law in Support of Comcast's Application for Temporary Restraining Order and Preliminary Injunction.** Notice of this filing will be sent by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Douglas N. Masters