**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| COMCAST CABLE COMMUNICATIONS, LLC, | ) ) | |
| Plaintiff, | ) ) | Case No. 11 CV 05284 |
| v. | ) ) | The Honorable Ruben Castillo |
| DIRECTV, INC., | ) ) | Magistrate Judge Jeffrey T. Gilbert |
| Defendant. | ) ) ) | |

**DIRECTV'S MOTION TO COMPEL DOCUMENTS AND TESTIMONY
RELATED TO COMCAST'S COMMUNICATIONS WITH
<u>STATE ATTORNEYS GENERAL ABOUT DIRECTV</u>**

Comcast's communications with the State Attorneys General are relevant to this case because Comcast has made them relevant to this case. In the last two weeks, Comcast has (a) alleged that DIRECTV's supposed violations of its settlement agreements with the State Attorneys General ("AG Agreements") support Comcast's claims in this case; (b) quoted the AG Agreements in its TRO papers and argued that they prove that DIRECTV is intending to deceive its customers with its NFL Sunday Ticket advertisements; and (c) acknowledged at the TRO hearing that it has communicated with multiple Attorneys General regarding DIRECTV's NFL Sunday Ticket offer. And while Comcast is out soliciting various Attorneys General to open investigations related to the advertising campaign at issue in this case, Comcast asserts that those communications are "wildly irrelevant" to this case and wants to hide them from DIRECTV and this Court, despite conceding during the discovery meet and confer that it would not be a burden to produce them. DIRECTV respectfully requests that the Court issue an order compelling

Comcast to produce documents related to its communications with State AGs and provide a witness pursuant to Rule 30(b)(6) to testify about these communications.

I.  **Although Comcast Has Repeatedly Used The AG Agreements To Try To Support Its Lawsuit, Comcast Now Claims Its Communications With The Attorneys General Are "Wildly Irrelevant."**

The Complaint. On August 3, 2011, Comcast filed a Complaint alleging DIRECTV's advertising of NFL Sunday Ticket at no extra charge was false and misleading. Complaint (Dkt. No. 1). Comcast characterized DIRECTV "as a serial offender in the false advertising realm," and referenced the AG Agreements to try to support this allegation. *Id.* ¶ 3.

The TRO Motion. The next day Comcast filed its Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion"), again referencing the AG Agreements—twice on the first page alone. TRO Mot. (Dkt. No. 9) at 1. In its reply brief, Comcast again made numerous references to the State Attorneys General, including a block quote from the lawsuit the Washington State Attorney General filed years ago. *See, e.g.*, TRO Reply (Dkt. No. 24) at 2-3. Comcast repeatedly cited the AG Agreements as supposed evidence for its assertion that DIRECTV had engaged in false advertising. *E.g.*, TRO Mot. (Dkt. No. 9) at 1; TRO Reply (Dkt No. 24) at 2, 3, 10-13.

The TRO Hearing. At the August 9, 2011, hearing on the TRO Motion, Comcast again referenced the AG Agreements, this time to argue that there was a "public" interest in enjoining DIRECTV's allegedly false advertisements. Declaration of Robyn Bladow in Support of DIRECTV's Motion to Compel ("Bladow Decl."), Ex. 1 (8/9/11 TRO Hr'g Tr.) at 16:25-17:8. Comcast also told the Court that it had communicated with "a number of Attorneys General" regarding the DIRECTV advertisements at issue in this case, including the Illinois Attorney General. *Id.* at 17:14-18; 43:13-20.

2

DIRECTV's Document Request And Rule 30(b)(6) Topic. After this Court denied Comcast's TRO Motion because, among other reasons, there was not "a high likelihood that the plaintiff will prevail in this case," DIRECTV served its first set of document requests, and a Notice of Deposition of Comcast pursuant to Rule 30(b)(6). *Id.*, Ex. 1 at 48:16-17; Bladow Decl. Ex. 2 (DIRECTV RFPs); Bladow Decl. Ex. 7 (Rule 30(b)(6) Notice). Request for Production No. 10 requests that Comcast produce: "All documents relating to any communications Comcast has had with any state Attorney General's office relating to DIRECTV." Bladow Decl. Ex. 2. Topic No. 10 in the Rule 30(b)(6) Notice seeks testimony related to "Communications with any State Attorneys General's Office related to DIRECTV." Bladow Decl. Ex. 7. During the parties' subsequent meet-and-confer call, DIRECTV confirmed that through its document request it sought all communications with Attorneys General related to DIRECTV's advertising of NFL Sunday Ticket. Bladow Decl. Ex. 3 (8/13/11 DIRECTV letter) at 3, ¶ 10. Comcast acknowledged that there was "very little" burden in producing these documents, but asserted that the document request was "wildly irrelevant" and declined to produce any responsive documents on this ground, and also declined to produce a Rule 30(b)(6) witness on this topic. *Id.*; *see also* Bladow Decl. Ex. 4 (8/14/11 Comcast letter) at 4; Bladow Decl. Ex. 6 (8/17/11 DIRECTV letter) at 1; Bladow Decl. Ex. 8 (Objections to Rule 30(b)(6) Notice).

**II.     Comcast Should Produce Documents And Provide A Witness Regarding Its Communications With State Attorneys General Because The Discovery Is Relevant To Allegations In Comcast's Complaint, To DIRECTV's Defenses, And Reasonably Calculated To Lead to Admissible Evidence.**

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or tangible things[.]" FED. R. CIV. P. 26(b)(1). In the discovery context, "relevant" is "construed broadly to encompass 'any matter that bears on, or that

3

reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *3600 Michigan Co. Ltd. v. Infra-Metals Co.*, No. 2:07 cv 367, 2009 WL 3111422, at *2 (N.D. Ind. Sept. 24, 2009) (citing *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002)). Under this broad definition of relevance in the discovery context, Comcast's communications with State Attorneys General regarding DIRECTV's advertising of NFL Sunday Ticket are unquestionably discoverable.

The thrust of Comcast's action is that DIRECTV's NFL Sunday Ticket advertisements are misleading. And although Comcast has provided no evidence of confusion, it has been arguing that DIRECTV's advertisements have caused confusion in the marketplace. Yet it appears that the only confusion in the marketplace is being caused by Comcast. DIRECTV has requested Comcast's communications with the Attorneys General so that it can demonstrate to the Court that Comcast is mischaracterizing DIRECTV's advertisements in the marketplace, including to the Attorneys General. The timing of Comcast's communications with the Attorneys General may also be relevant. If Comcast's communications took place days, weeks, or months before it filed its motion for a preliminary injunction, that further undermines Comcast's arguments of urgency and irreparable harm. Comcast's communications with the Attorneys General are ultimately likely to show not only that Comcast has been misrepresenting DIRECTV's advertising campaign, but also that Comcast is trying to leverage its position in the market to cause the Attorneys General to open investigations of DIRECTV so that Comcast's empty arguments about the AG Agreements in its Complaint somehow magically grow teeth.

In addition, communications from the Attorneys General back to Comcast are reasonably likely to show that they do not agree with Comcast that DIRECTV's advertisements violate the AG Agreements or are otherwise misleading. Notwithstanding Comcast's efforts to stir up

multiple Attorneys General's interest in Comcast's baseless lawsuit,[1] communications from the Attorneys General may reveal disagreements or doubt concerning Comcast's claims that the NFL Sunday Ticket advertisements are misleading. Or the Attorneys General may have responded to Comcast with questions about or comparisons to Comcast's own advertisements and disclosures.

Also important is the fact that Comcast seeks equitable relief in this case, including in the form of a preliminary injunction. Evidence of Comcast's secret communications with the Attorneys General is reasonably likely to support DIRECTV's unclean hands defense to Comcast's claims for equitable relief, and show Comcast's own potentially anti-competitive behavior. *See Packers Trading Co. v. Commodity Futures Trading Comm'n*, 972 F. 2d 144, 148-49 (7th Cir. 1992) (noting that the unclean hands defense "applies 'to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.' . . . [and] gives wide range to the court's use of discretion in refusing to aid the unclean litigant") (quoting *Precision Instrument Mfg. Co. v. Auto. Mach. Maint. Co.*, 324 U.S. 806, 815, (1945)); *see also TJM Corp. v. Xerox Corp.*, 1992 WL 125374, at *4 (E.D. La. May 18, 1992) (denying preliminary injunction in part because of unclean hands, based on the plaintiff's factual misrepresentations of basis for relief); *Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F. Supp. 73, 76 (S.D.N.Y. 1983) (denying preliminary injunction where plaintiff engaged in the same alleged deceptive practice as defendant; "since plaintiff's hands are similarly unclean, they may not secure equitable relief simply because defendants' hands may be a shade or two less clean").

---

[1] While Comcast represented to the Court that it communicated with the Illinois Attorneys General because "state law requires Comcast to notify the Attorney General of the State of Illinois of the filing of a complaint that invokes the state's unfair trade practices" (Bladow Decl. Ex. 1 at 43:13-16), that is not the entire story. DIRECTV is aware that Comcast has contacted multiple State Attorneys General to shop around its allegations in this lawsuit, including by sending a Loeb and Loeb lawyer to meet with California Attorney General Kamala Harris to solicit her office to open an investigation.

Comcast's communications with the State Attorneys General bear directly on the credibility of Comcast's claims and allegations in this action, and are likely to support DIRECTV's defenses to those claims. Comcast should be compelled to produce its communications with the State Attorneys General regarding DIRECTV's NFL Sunday Ticket offer—communications that DIRECTV believes will demonstrate that Comcast is trying to seek through the Attorneys General what it could not obtain in the marketplace or the Court: a competitive advantage by hindering DIRECTV's ability to advertise NFL Sunday Ticket.

* * *

Having made the Attorneys General and the AG Agreements an issue in this case, Comcast cannot now prevent DIRECTV from obtaining discovery into Comcast's communications with them. Accordingly, DIRECTV requests that the Court issue an order compelling Comcast to produce documents and testimony regarding its communications with the State Attorneys General related to NFL Sunday Ticket.

| | |
|---|---|
| Dated: August 18, 2011 | /s/ Robyn E. Bladow |
| | Mark A. Pals, P.C. |
| | Paul R. Garcia, P.C. |
| | Tom M. Monagan |
| | KIRKLAND & ELLIS LLP |
| | 300 North LaSalle |
| | Chicago, Illinois 60654 |
| | Telephone: (312) 862-2000 |
| | Facsimile: (312) 862-2200 |
| | |
| | Melissa D. Ingalls (*pro hac vice*) |
| | Robyn E. Bladow (*pro hac vice*) |
| | KIRKLAND & ELLIS LLP |
| | 333 South Hope Street |
| | Los Angeles, CA 90071 |
| | Telephone: (213) 680-8400 |
| | Facsimile: (213) 680-8500 |
| | |
| | *Attorneys for Defendant DIRECTV, Inc.* |